UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MICHIGAN UNITED
CONSERVATION CLUBS, a
Michigan nonprofit corporation,

     Plaintiff,

v.

GRETCHEN WHITMER, in her
official capacity as Governor of the
State of Michigan, and DANIEL
EICHINGER, in his official capacity as
Director of the Michigan Department
of Natural Resources,

     Defendants.

Case No. 20-cv-00335

Honorable _____

---

## **COMPLAINT**

Plaintiff, Michigan United Conservation Clubs ("MUCC"), by and through its counsel, Varnum LLP, hereby states as its Complaint against Defendants Gretchen Whitmer, in her official capacity as Governor of the State of Michigan, ("Governor Whitmer"), and Daniel Eichinger, in his official capacity as Director of the Michigan Department of Natural Resources, ("Director Eichinger"), as follows:

## **NATURE OF ACTION**

1.    Boating is a cornerstone of Michigan culture, not to mention a psychological refuge in the current crisis.  But families who untie a skiff from

their dock could be jailed for 90 days for violating Governor Whitmer's directives, which purport to criminalize all "motorized" boating.

2.     Criminal charges for engaging in Michigan's pastime will come as a shock to any boater who actually reads Governor Whitmer's Executive Order 2020-42, because the Order itself expressly and unequivocally allows all "outdoor physical activity."  There can be no doubt that boating is an "outdoor physical activity."

3.     But contrary to the plain text of the Order, Governor Whitmer and Director Eichinger have published responses to "Frequently Asked Questions" about Executive Order 2020-42.   There, Governor Whitmer and Director Eichinger purport to prohibit all motorboat use, in every corner of the State of Michigan, on every body of water, for any purpose, and whether the boat operator is alone, with family, or a pet.

4.     Pursuant to these FAQ responses, the State has closed public access to waterways, and criminally charged MUCC members for using motorboats as their form of "outdoor physical activity."

5.     This has left MUCC members, and other members of the angling and boating community, in an untenable position.  Follow the terms of the Executive Order, but risk criminal prosecution.  Or abandon constitutional, statutory, and

common law riparian rights to reasonable use of Michigan waters based on nothing more than an FAQ response.

6. Plaintiff MUCC – the largest statewide conservation organization in the nation – brings this civil rights action on behalf of its 40,000 members under the Fourteenth Amendment and Commerce Clause of the United States Constitution, 42 U.S.C. § 1983, and the Michigan Constitution, challenging Governor Whitmer and Director Eichinger's authority to unilaterally criminalize boating activity in the State of Michigan.

## PARTIES, JURISDICTION AND VENUE

7. Michigan United Conservation Clubs is a Michigan nonprofit conservation organization located in Lansing, Michigan, that represents over 200 affiliate clubs and 40,000 members in the State of Michigan.

8. Defendant, Gretchen Whitmer, is and at all times relevant to this Complaint was the Governor of the State of Michigan and responsible for enforcing the laws of the State of Michigan, and charged with implementing policy through executive orders, including the Executive Orders which took effect on March 24, 2020 and April 9, 2020.

9. Defendant Whitmer issued Executive Order 2020-42 and its accompanying FAQs at issue in this Complaint under color of state law.

10. Defendant Whitmer is sued in her official capacity only.

3

11.     Defendant Daniel Eichinger is, and at all times relevant to this Complaint was, the Director of the Michigan Department of Natural Resources, acting under color of state law.

12.     Defendant Eichinger is sued in his official capacity only.

13.     Pursuant to his authority as Director of the MDNR, Director Eichinger is empowered to enforce the laws of the State of Michigan with regard to the use of Michigan's waterways and other natural resources.

14.     As described below, the MDNR has enforced Executive Order 2020-42 and its accompanying FAQs by writing citations and issuing warnings to those who violate (in MDNR's opinion) those restrictions.

15.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging violation of rights and privileges under the United States Constitution.

16.     This action is brought by Plaintiff to obtain relief under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, the Fourteenth Amendment, U.S. Const. Amend. XIV, the Commerce Clause of the U.S. Constitution, the Michigan 1963 Constitution,  Rules 57 and 65 of the Federal Rules of Procedure, *Ex Parte Young*, 209 U.S. 123 (1908), and the general legal and equitable powers of this Court.

17.     Plaintiff's claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

18.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this district and Defendant is a resident of the State in which this district is located.

## GENERAL ALLEGATIONS

**A.     Michigan Citizens' Right to Use the Great Lakes, the Shores of the Great Lakes, and Michigan's Navigable Inland Lakes and Streams.**

19.     Each Michigan resident has a recognized right under the public trust doctrine, the Michigan Constitution, and Michigan statutes to use the Great Lakes, the shores of the Great Lakes, and navigable inland lakes and streams for fishing and boating.

20.     For inland lakes and streams, the traditional activities that are protected by the public trust doctrine are bathing, swimming, wading, fishing, and boating, including the temporary anchoring of boats.

21.     Members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner.

22.     Michigan's Public Trust Doctrine is embodied in Michigan statutes which expressly recognize the public's right to activities such as fishing and boating.

5

23.     The Michigan Constitution, Article 4, Section 52 states that "[t]he conservation and development of the natural resources of the state are hereby declared to be the paramount public concern in the interest of the health, safety, and general welfare of the people."

24.     Under Section 324.40113a of the Michigan Natural Resources and Environmental Protection Act ("NREPA"), the Michigan Legislature recognizes that "[t]he fish and wildlife populations of the state and their habitat are of paramount importance to the citizens of this state."

25.     The Michigan legislature has "declare[d] that hunting, fishing, and the taking of game are a valued part of the cultural heritage of this state and should be forever preserved.  The legislature further declares that these activities play an important part in the state's economy and in the conservation, preservation, and management of the state's natural resources.  Therefore, the legislature declares that the citizens of this state have a right to hunt, fish, and take game, subject to the regulations and restrictions prescribed by subsection (2) and law." MCL324.40113a(3).

26.     Additionally, the Michigan Administrative Code recognizes the "the paramount right of the public to navigate and fish in all inland lakes and streams that are navigable" and "the perpetual duty of the state to preserve and protect the

public's right to navigate and fish in all inland lakes and streams that are navigable." AC R 281.811.

**B.     The Michigan United Conservation Clubs.**

27.     Plaintiff MUCC was founded in 1937 with the mission of uniting citizens to conserve, protect and enhance Michigan's natural resources and outdoor heritage.

28.     MUCC's membership is a diverse collection of organizations and individual members whose missions involve conservation of fisheries, wildlife and natural resources, as well as the promotion of hunting, fishing and trapping activities.

29.     MUCC is the largest statewide conservation organization in the nation.

30.     MUCC's members, as set forth below, have been directly affected by the Order and FAQs, including by being criminally charged under those directives.

**C.     Governor Whitmer and Director Eichinger Ban Navigation, Fishing, and All Other Activities in Connection With Motor Boating.**

31.     After the World Health Organization ("WHO") and the Center for Disease Control and Prevention ("CDC") identified the novel coronavirus ("COVID-19") as a "public health emergency of international concern", Governor Whitmer proclaimed the existence of a state of emergency throughout the State of Michigan on March 10, 2020.

7

32.     Since March 10, 2020, Governor Whitmer has issued no fewer than 39 separate executive orders in response to COVID-19.

33.     Executive Order 2020-21, attached as **Exhibit A**, took effect on March 24, 2020.  Order 2020-21 restricted travel throughout the State of Michigan and ordered all business (with limited exceptions) to cease operations.  Order 2020-21 remained in effect until April 13, 2020, and was subsequently revoked and replaced by Order 2020-42.

34.     Initially, Governor Whitmer permitted all boating as an outdoor recreational activity.  Specifically, the Governor's website stated that "boating falls within the outdoor activities permitted under the order."

35.     Executive Order 2020-42, attached as **Exhibit B**, took effect on April 9, 2020.  It extends the timeline originally set by Order 2020-21 and grossly expands restrictions on entities and individuals' constitutional rights.

36.     By its own terms, Executive Order 2020-42 will remain in effect until April 30, 2020 at 11:59 pm.  Governor Whitmer has publicly expressed a desire to extend the measures of Executive Order 2020-42 into May/June 2020.

37.     A "willful violation" of Executive Order 2020-42 is a misdemeanor. The penalty for a misdemeanor is up to $1,000 fine and/or up to 90 days in jail.

38.     Executive Order 2020-42 arbitrarily and unreasonably criminalizes the exercise of fundamental rights and liberty by MUCC members.

8

39.     Executive Order 2020-42 did not mention motor boating; in fact, it encouraged outdoor physical activity:

a.      Individuals may leave their home or place of residence, and travel as necessary:

1.      To engage in outdoor physical activity, consistent with remaining at least six from people from outside the individual's household. Outdoor physical activity includes walking, hiking, running, cycling, kayaking, canoeing, or other similar physical activity, as well as any comparable activity for those with limited mobility.

40.     Navigating waters, fishing, hunting and performing similar activities in connection with a motorized boat are commonly understood by Michigan residents to encompass such "outdoor physical activity."

41.     However, the issue became confused when the Governor published responses to "Frequently Asked Questions" on April 10, 2020.  The Governor and Director Eichinger opined that Executive Order 2020-42 prohibited any use of motorized boats, anywhere in the State of Michigan and its surrounding waters.  A copy of the FAQs pages as they appeared on the Governor's website on April 13, 2020 is attached as **Exhibit C**.

42.     The FAQ at issue states the following regarding boating:

**Q: Does boating constitute "outdoor activity" under the new executive order?**

A: Physical outdoor activity like kayaking, canoeing, and sailing is permitted under the order, but using a motorboat, a jet ski, or other similar watercraft is not.  Any outdoor activity permitted under the order, including

boating, must be done in a manner consistent with social distancing, and individuals should use only their own equipment to prevent the transmission of the virus through the touching of shared surfaces.   Additionally, in accordance with section 2 of the order, persons not part of a single household may not boat together.

While some boating is permitted under the order, the provision of boating services or supplies does not itself constitute critical infrastructure work, and business and operations may not designate workers to come to work for that purpose.  As needed, these businesses and operations may designate workers to leave their home for work if their in-person presence is strictly necessary to conduct the minimum basic operations listed in section 4(b) of the order. Minimum basic operations do not include serving members of the public. The order, however, does permit in-person work necessary to maintain the safety and sanitation of sites otherwise open to the public for outdoor physical activity permitted under the order.  All in-person work permitted under the order must be done in accordance with mitigation measures listed in section 10 of the order.

43.     In other words, the Governor's FAQs opine that the use of a "motorboat, jet ski, or similar watercraft" at any time, in any way, anywhere in the State of Michigan and surrounding waters, is prohibited.

44.     Governor Whitmer also instructed the MDNR to prohibit the use of any motorized boats, anytime, anywhere.  A copy of the MDNR's guidance is attached as **Exhibit D** and can be found at https://www.michigan.gov/dnr/0,4570,7-350-79137_79770_98926---,00.html.  The MDNR's guidance stated:

Am I able to use my motor-powered boat for recreational purposes, including fishing?

No. Under the governor's revised "Stay Home, Stay Safe" Executive Order 2020-42, physical outdoor activity, such as kayaking, canoeing, and sailing,

remains permissible.  However, **the use of a motorboat, jet ski or similar watercraft (includes gas and electric motors) is not permitted** for the duration of the Executive Order, which is currently set to expire at 11:59 p.m., April 30.  Prohibition on the use of motorized watercraft is reflected in the governor's Frequently Asked Questions document that explains and interprets Executive Order 2020-42.

The DNR has received many reports about heavy use of boat launches across the state and the subsequent congregation of people at these launches in violation of social distancing requirements, and in a manner that threatens public health.  In addition, people who use motorized watercraft typically need to procure secondary services for their craft, such as parts and gasoline, that could unnecessarily increase contact with others and spread disease. The hope is that the prohibition on the use of motorized watercraft will reduce the movement of, and contact among, people with the intent of slowing the spread of the coronavirus.
Please recreate locally and responsibly.  Long distance travel is prohibited unless it is for a purpose considered critical under the governor's "Stay Home, Stay Safe" Executive Order.
(Updated April 13, 2020)

45.    Governor Whitmer and Director Eichinger are now criminally penalizing, and threatening to criminally penalize, MUCC members (and Michigan residents generally), for violating a FAQ page on the Governor and MDNR's website.

46.    According to an April 13, 2020 article in the Detroit News, on April 11 and 12, 2020, Governor Whitmer and Director Eichinger, through the MDNR and law enforcement, issued five citations and 323 warnings for violating Executive Order 2020-42.  A copy of this article is attached as **Exhibit E** and can be                                    found                                    at https://www.detroitnews.com/story/news/local/michigan/2020/04/13/michigan-

11

dnr-issued-boaters-5-tickets-323-warnings-violating-stay-home-

order/2986076001/.

47.     Governor Whitmer's FAQs do not define what a "motorboat," "jet

ski," or "similar watercraft" is.

48.     The FAQs, for example, state that sailboats are permitted, but

sailboats longer than five meters generally have motors, and are thus reasonably

considered a "motorboat."

49.     The FAQs also state that canoes and rowboats are permitted, but many

canoes and rowboats also have motors, and can thus reasonably be considered a

"motorboat" or "similar watercraft."

50.     Moreover, most angling boats might be considered a "motorboat" or

"similar watercraft" because they use trolling motors, but those are often electric,

not gasoline.  Batteries for electric motors are charged at home and do not require a

stop for gasoline.

**D.     Governor Whitmer and Director Eichinger's Arbitrary Enforcement of
the Order and Accompanying FAQs.**

51.     MUCC is cognizant of the public health crisis associated with

COVID-19 and supports the administration in taking well-informed action to curb

the spread of this novel virus.

52.     MUCC's members, friends, and families have been greatly impacted

by this virus and affected by the losses suffered by the State of Michigan.

12

53.     Through Governor Whitmer and Director Eichinger's latest Order and FAQs, however, MUCC's members, including anglers, boaters, hunters, and recreationists, have been subjected to unlawful and arbitrary deprivations of their constitutional, statutory, and common law rights that have nothing to do with the ostensible purpose of the Order.

54.     MUCC members have been left confused and frustrated with the prohibition of navigation, fishing, hunting and other activities in connection with motorboats, among other arbitrary prohibitions, and the gross violations of their fundamental rights.

55.     While some may see snow and hail in April as a reason to stay home, anglers have the greatest diversity of fishing available this time of year.

56.     Many MUCC members rely on this fishing not only as a locally sourced, high-quality protein for their family and friends, but also as an activity important to their mental health during the stresses of this pandemic.  For some members, fishing and boating activities are their only source of income.

57.     MUCC members, however, need access to the waters and the fisheries to participate in this activity, which collectively contributes not only state license revenue to manage and protect the State of Michigan's fisheries, but $2.3 billion to the State of Michigan's economy annually.

58.     While MUCC and its members support measures to mitigate risks to exposure of COVID-19, these arbitrary measures entirely fail to do so.

59.     Thousands of public and private accesses to water exist throughout Michigan that are infrequently visited by people with motorboats and are vital to Michiganders' mental health and wellbeing during this time.

60.     The Governor's Order and FAQs impact even more drastically MUCC members who live directly on the water.  These homeowners are unable to leave their back door and get on their boat.

61.     Mark Zona is a current member of MUCC.  Mr. Zona is a citizen of the State of Michigan and resides in St. Joseph County.

62.     Mr. Zona lives on a Michigan inland lake, Klinger Lake.  Mr. Zona currently owns a legally registered, motorized boat docked in the lake and available for him to use by walking from his home to the lake.  Mr. Zona also has a valid Michigan fishing license.

63.     Due to Governor Whitmer's Order and accompanying FAQs, Mr. Zona risks imminent criminal prosecution if he uses his boat, even by himself. But-for the threat of criminal prosecution, Mr. Zona would be using his boat on a regular, if not daily, basis.

64.     Governor Whitmer's boating ban is also far more than a recreational inconvenience for Mr. Zona.  Mr. Zona is a professional fisherman and derives

significant income from videos and other content generated while he is using a motorized boat.  He also has a prominent presence on fishing shows on cable.  Consequently, both Mr. Zona's professional and recreational activities are directly and adversely affected by Governor Whitmer's Order and accompanying FAQs.

65.    Louie Stout is a current member of MUCC.  Mr. Stout is a citizen of the State of Michigan and resides in Cass County, Michigan.

66.    Mr. Stout lives on Driskels Lake.  Mr. Stout owns a registered, motorized fishing boat and would normally be regularly using that boat on his lake at this time.  Mr. Stout also has a valid Michigan fishing license.

67.    However, under fear of criminal prosecution from Governor Whitmer's Order and accompanying FAQs, Mr. Stout has been unable to use his boat on his private property, even though he would be using it by himself and in immediate proximity to his residence.

68.    Patrick Cummings is a current member of MUCC.  Mr. Cummings is a citizen of the State of Michigan and resides in Salinac County, Michigan.

69.    Mr. Cummings owns a registered, motorized fishing boat and would regularly use that boat on Michigan's waterways at this time for fishing and other recreational activities.  Mr. Cummings also has a Michigan fishing license.

70.    When Mr. Cummings exercised his fundamental rights to navigate Michigan's waterways and lakes (Lake Huron) and engage in fishing and other

recreational activities on April 14, 2020, he was cited and ticketed by an MDNR compliance officer for "Motorboat/Fishing" in violation of Governor Whitmer's "Executive Order 2020-42".  A copy of the ticket issued to Mr. Cummings is attached as **Exhibit F**.

71.    Due to this citation, Mr. Cummings must now appear for a hearing in the 73A District Court of Salinac County, for the alleged crime of navigating the interstate and Michigan waters of Lake Huron to fish in his own motorboat.

72.    Timothy Quist is a MUCC member.  Mr. Quist, his wife and son are citizens of the State of Michigan and reside on Big Whitefish Lake in Montcalm County, Michigan.

73.    Mr. Quist owns three motorized boats that he would be using for recreational and fishing purposes but-for the Governor and Director's threatened prosecution of the Order and FAQs.

74.    As a riparian owner, Mr. Quist would be putting his pontoon boat on the lake now so that he and his immediate household could use it on the water.

75.    It is also steelhead season, and Mr. Quist and his son would otherwise be using one of their motorized boats to fish together on Michigan rivers.  The boat Mr. Quist uses for steelhead fishing uses very little gas and would not require fueling at a public gas station before or after a fishing trip, nor would the fishing trip necessitate any other contact with the general public.

76.     Steelhead fishing is time-sensitive.  By May 1, the fish will be headed back out to the Great Lakes, and no longer accessible to Mr. Quist.  Mr. Quist's river boat is a very expensive jet boat custom-built for steelhead fishing.  If he cannot use it until after May 1, he will not be able to use it for the entire 2020 year.

77.     The Governor and Director's threatened prosecution has forced Mr. Quist and his family to avoid these lawful boating activities.

78.     Another MUCC member, Gary Gorniak, is the president of the Straits Area Sportsmen's Club.  The Straits Area Sportsmen's Club members participate in a legal cormorant harassment program on the 4,200-acre Brevort Lake under authority from the United States Department of Agriculture Animal and Plant Health Inspection Service (USDA APHIS) Wildlife Services.

79.     Cormorants migrate through sometimes 500 at a time to the lake, and the Club uses chase motorboats to keep the cormorants out of the walleye spawning areas and to keep them moving off the lake.

80.     Mr. Gorniak and the Club have spent tens of thousands of dollars in the past few years raising and stocking walleye in this public lake.  As a result of the Governor Order and FAQs, Mr. Gorniak cannot protect his hard work and investment.

81.     Jordan Pena is a MUCC member, a Michigan resident, and a supervisor from Midland Public Works.  He read Governor Whitmer's Order

before going fishing and, based on that reading, did not believe that navigating and fishing on a lake in a motorboat was prohibited.

82.    On April 11, 2020, Mr. Pena went fishing on the Saginaw Bay with a friend who is a former member of the U.S. Coast Guard.  Mr. Pena's boat is 23 feet long, and the two friends complied with social distancing requirements on the trip.

83.    Nevertheless, a MDNR compliance officer cited Mr. Pena for "[v]iolat[ing] Executive Order 2020-42."  A copy of the citation issued to Mr. Pena is attached as **Exhibit G**.

84.    Due to this citation, Mr. Pena must now appear for a hearing in the district court in Bay County, for the alleged crime of "Fishing Together" on the Saginaw Bay waters in his own motorboat.

85.    Due to the outbreak of COVID-19, MUCC members, including Mr. Zona, Mr. Stout, Mr. Cummings, Mr. Quist, Mr. Pena and Mr. Gorniak, have implemented social distancing measures recommended by the Centers for Disease Control and Prevention, specifically including at least six feet from people not in the same household.

86.    MUCC members, including Mr. Zona, Mr. Stout, Mr. Cummings, Mr. Quist Mr. Pena and Mr. Gorniak, desire to and have paid registration and licensing fees to the State of Michigan to use their motorized boats for navigation, fishing and recreation, among other purposes, either alone, or with members of their

immediate household, and to do so while respecting the recommended social distancing measures.

87.    As a result of the Governor and Director's interpretation of Executive Order 2020-42, if MUCC's members, including Mr. Zona, Mr. Stout, Mr. Cummings, Mr. Quist, Mr. Pena and Mr. Gorniak exercise their statutorily and constitutionally-protected rights, they would be subject to prosecution, fines, and criminal penalties.  Some already have.

88.    As a result, MUCC's members, including the above members, have ceased boating activities.  MUCC and its members have no recourse for this deprivation of their liberty and property rights other than seeking redress in this Court.

**E.    Governor Whitmer and Director Eichinger's Enforcement of the Boating Ban Does Not Advance Public Safety.**

89.    There is no reasonable justification for restricting Michigan residents from fishing, hunting, or engaging in any other recreational activities on a motorized boat during this pandemic.

90.    Indeed, under Executive Order 2020-42, an Illinois resident could travel from his State over navigable waterways in Michigan without violating Executive Order 2020-42 and its FAQs.

91.    Thus, the Executive Order 2020-42 and its accompanying FAQs discriminate against individuals, including members of MUCC, based upon their

State of residence, impair their right to travel and navigate Michigan's waterways, and deprive them of their use and enjoyment of their constitutional liberties and property.

92.     Prohibiting individuals from engaging in navigation, fishing, hunting, and other recreational and outdoor activities in a motorized boat, including on their own private property, has no real or substantial relation to promoting the ostensible objectives of Executive Order 2020-42 and accompanying FAQs, particularly in light of the exceptions permitted under the same.

93.     If Governor Whitmer actually sought to safeguard and preserve the public and welfare against COVID-19 and enforce social distancing requirements, she could adopt narrowly tailored measures to that end.

94.     Banning all navigation, fishing, recreation and other activities on motorized boating only (including on private property by single persons) does not further the Order and FAQs' ostensible purpose.

95.     For example, under the Governor's Order and FAQs as written, persons using sailboats, rowboats, kayaks, and other watercraft can and still will congregate by boat launches.

96.     Under Governor Whitmer's Order and accompanying FAQs, several persons (of a household) could go out and operate a 30-foot sailboat.

20

97.    In contrast, motorboats generally only require one person to operate, but are arbitrarily banned by Governor Whitmer and Director Eichinger's vague and contradictory FAQs.

98.    The challenged measures of Executive Order 2020-42 and its accompanying FAQs, as set forth in this Complaint, lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relationship to the objectives of those measures, and are a plain, palpable invasion of rights secured by fundamental law.

99.    Governor Whitmer's Order and FAQs also entirely fail to take into account the actual design, structure, and operation of water craft in relation to the possible risk for transmission of COVID-19.

100.   For example, Governor Whitmer and Director Eichinger's directives expressly note that sailboats are permitted, but sailboats longer than five meters generally have motors.

101.   Moreover, Governor Whitmer's Order and FAQs ban most angling boats as "motorboats" because they use trolling motors, but trolling motors are electric, not gasoline.

102.   Governor Whitmer and Director Eichinger's purported concerns about the procurement of secondary services such as parts and gasoline are dubious. Parts (even if needed) can be procured online. And if the services or parts are not

available, those individuals would simply not be able to use their motorboat. Gasoline, even if needed, can easily be obtained while maintaining social distancing and paying at the pump.

103.   Sailboats generally take multiple people to operate, but are permitted. Motorboats and jet skis, which generally only require one person to operate, are banned.

104.   Governor Whitmer and Director Eichinger's directives are also extremely overbroad, prohibiting any use of motorboats anywhere in Michigan and its surrounding waters.

105.   Instead of utilizing narrowly tailored means, the Order and FAQs are a scattershot approach that arbitrarily penalizes (with criminal penalties) all users of motorized boats for any purpose everywhere, even residents who live on private lakes and/or never use a boat launch at all.

106.   Governor Whitmer and Director Eichinger's directives are so vague that at least five different county sheriffs have issued public statements that they cannot enforce the directives.

107.   On April 15, 2020, the Sheriffs of Mason County, Manistee County, Benzie County, and Leelanau County declared that they would not be enforcing Governor Whitmer's Executive Order 2020-42.   A copy of the April 15, 2020 County Press Release is attached as **Exhibit H**.

108.   The Sheriffs stated "[w]hile we understand her desire to protect the public, we question some restrictions that she has imposed as overstepping her executive authority.  She has created a vague framework of emergency laws that only confuse Michigan citizens."

109.   The Manistee County Sheriff expressly highlighted the unfairness of Governor Whitmer's Order and FAQs as it relates to motorboats: "[t]he motorboat thing, that was a real big kicker . . . [y]ou can take a kayak or canoe out but you can't take a motorboat out because you're going to use gas?  You're going to touch that gas pump one more time a day or week, that's just a little much."  April 15, 2020 Upnorthlive.com Article, **Exhibit I**.

110.   On April 16, 2020, the Barry County Sheriff, Dar Leaf, became the fifth Sheriff to state that his department would not strictly enforce Governor Whitmer's Order and FAQs.  *See* April 16, 2020 WWMT Article, **Exhibit J**.  Sheriff Leaf agreed that Governor Whitmer's Order and FAQs were confusing and "really out of line" in some cases.  *Id.*  "People are out in the boat in the middle of the lake, what are the chances of spreading that virus? . . . Here in Barry County, we've got 327 lakes.  For people to go out and start patrolling all those lakes, and start writing everybody tickets, that's not possible."  *Id.*

111.   The Mason County Sheriff, Kim Cole, also highlighted the Governor's Order and FAQs' absurdity on Fox News, stating "[a] person can break out their

ORV and go ride trails, but a person can't break out a 16-foot boat and fish." April 17, 2020 Mlive article, **Exhibit K**.

112. Governor Whitmer and Director Eichinger's directives are so vague that the Baraga County Prosecuting Attorney Joseph O'Leary has issued a public statement interpreting Governor Whitmer's Executive Order 2020-42 as *permitting* motorized boating, in contradiction to the Governor and Director's directives. A copy of the April 16, 2020 Baraga County Press Release is attached as **Exhibit L** and can be found at https://www.baragacounty.org/ufaqs/test-question/?entity_template=default.

113. Specifically, the Baraga County Prosecutor interpreted Executive Order 2020-42 as providing that "fishing is an outdoor physical activity with or without a motor attached to a particular fishing vessel." Moreover, in the prosecutor's opinion, Executive Order 2020-42 "allows persons NOT from the same household to fish together provided they follow CDC social distancing guidelines . . . ."

114. The Baraga County Prosecutor's press release explicitly noted that:

BE ADVISED THAT I AM INFORMED, AND DO BELIEVE, THAT THE DNR DISAGREES WITH MY ANSWER TO THIS FAQ. ACCORDINGLY SOMEONE COULD VERY WELL BE TICKETED EVEN IF THEY ARE USING GOOD COMMON SENSE AND SAFETY PRECAUTIONS. IF THAT HAPPENS DO NOT FIGHT OR ARGUE WITH THE DNR OR ANY OTHER LAW ENFORCEMENT OFFICER. THOSE WHO PHYSICALLY RESIST OR OBSTRUCT SUCH

OFFICERS WILL BE PROSECUTED FOR THAT OFFENSE, EVEN IF THEY ARE NOT PROSECUTED FOR AN EEO VIOLATION.

BE ADVISED THAT THE ATTORNEY GENERAL HAS AUTHORITY TO ENFORCE STATE LAW THROUGHOUT MICHIGAN AND IF SHE DISAGREES WITH MY DECISION ON ANY PARTICULAR CASE, SHE MAY BRING A PROSECUTION EVEN IF I DECLINE TO DO SO. ACCORDINGLY, PROCEED WITH CAUTION AND/OR CONSULT YOUR OWN ATTORNEY BEFORE MAKING DECISIONS BASED SOLELY ON THIS FAQ SITE.

115.   To withstand constitutional scrutiny, criminal prohibitions must be objectively clear and unambiguous.  When law enforcement and the prosecuting attorney themselves cannot discern what is permitted and what is not, or reach conflicting opinions based on the same language, criminally prosecuting the citizens of a State for violating those vague and unclear prohibitions is patently unconstitutional.

116.   MUCC's members need clear and specific laws presented to them, not subjective responses to FAQs untethered from common sense and reality.

117.   MUCC's members have a long-established constitutional right to clearly understand the penalties they may face.  The current contradictions between Defendant Whitmer's Order and FAQs and the MUCC members' constitutional rights are unacceptable and unenforceable.

118.   Governor Whitmer and Director Eichinger's contradictory, imprecise and nonsensical use of the terms "motorboat," "similar watercraft," and "outdoor physical activity" in their directives has encouraged and resulted in arbitrary and

discriminatory enforcement of the Order against MUCC members, as discussed above.

119.   But for Governor Whitmer and Director Eichinger's ambiguous and vague directives and arbitrary enforcement of the same, MUCC members would freely exercise their constitutional rights to navigate Michigan's waterways, and fish, hunt, and otherwise enjoy the outdoors in motorboats, similar watercraft or otherwise.

**F.**   **Governor Whitmer and Director Eichinger's Enforcement of the Order Conflicts With the Enactments of Other States, Thereby Unconstitutionally Burdening Interstate Commerce.**

120.   In contrast to Governor Whitmer and Director Eichinger's Order and FAQs, several neighboring states have permitted and encourage all types of navigation, boating and fishing as outdoor recreational activity under those states' stay-at-home orders.

121.   For example, Illinois, Indiana, Ohio, and Wisconsin all allow boating and fishing, with no bans for motorized boats, as Governor Whitmer and Director Eichinger have done.

122.   In fact, boat launch sites in Illinois and Wisconsin are operating free of charge where a fee is ordinarily required.

123.   Businesses in Ohio that support boaters with servicing and maintenance have also been permitted to remain open.

124. Minnesota allows boating and fishing, and has excluded several parts of the boating industry from its stay-at-home order as an "essential business" in order to encourage boaters. Those who install and support docks, lifts, and other water-related equipment, and those servicing boat delivery all remain open as well.

125. State laws which conflict with enactments of other States are unconstitutional if they unduly burden interstate commerce.

126. Governor Whitmer's Order and FAQs is entirely inconsistent with other States' stay-at-home orders, with the adverse effect of eliminating navigation, fishing, and other activities conducted in connection with motorboats between States and in connection with interstate commerce.

127. Moreover, because Governor Whitmer's Order and FAQs ban navigation, fishing, and other activities in connection with motorized watercraft anywhere in the interstate and inland waters of the State of Michigan, including the Great Lakes, the directives impermissibly regulate interstate commerce occurring entirely outside the borders of the State of Michigan by preventing and otherwise regulating navigation, travel, distribution, transportation, and other activities occurring outside of Michigan.

128. Defendants' overbroad and draconian directives and enforcement also impermissibly forces states to comply with Governor Whitmer and Director Eichinger's ban on navigation, fishing, and other activities on motorized watercraft.

129. For example, as a direct result of Defendants' drastic restrictions as described herein, the Wisconsin Department of Natural Resources ("WDNR") has been forced to warn Wisconsin boaters about Michigan's Executive Order 2020-42 and its ban on any use of motorized watercraft and the risk of criminal prosecution for violations of that Order in Michigan-Wisconsin Boundary Waters.

130. For the above-mentioned reasons, among others, Governor Whitmer's Order has been described as "going to radical extremes," and "one of the most restrictive stay-at-home orders in the country," by prominent news organizations such as NBC and Fox News, among others. See articles attached as **Exhibit M**.

131. The burdens Governor Whitmer's extreme directives place on interstate commerce, including but not limited to the entire elimination of motorized boating anywhere on the State of Michigan's interstate and inland waters, is excessive in relation to Governor Whitmer's ostensible interest in preventing the spread of COVID-19 through activities conducted on motorboats.

## <u>COUNT I</u>
## <u>DECLARATORY JUDGMENT</u>

132. Governor Whitmer's Executive Order 2020-42, by its plain terms, allows motorboat use, and MUCC ask this Court to enter a judgment declaring motorboat use as an allowed "outdoor physical activity" under the Order.

133. Further, to the extent Governor Whitmer and Director Eichinger contend that the Order prohibits motorboat use, it is void for vagueness under the

Fourteenth Amendment and the Michigan 1963 Constitution, violates the equal protection and due process principles of the Fourteenth Amendment, and contravenes the Commerce Clause of the U.S. Constitution. Additionally, the foregoing directives by the Governor are not authorized by the Emergency Management Act 390 of 1976, MCL § 30.403, or the Emergency Powers of Governor Act 302 of 1945, MCL § 10.31, or any other statute, and otherwise exceed the scope of Governor Whitmer's emergency powers.

134. Plaintiff seeks a declaratory judgment finding that Governor Whitmer's Order and FAQs to the extent they ban all navigation, fishing, and other activities conducted in connection with motor boating, and as applied to MUCC and its members, are unconstitutional and in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, the Commerce Clause of the United States Constitution, and Article 1, Section 17 of Michigan's 1963 Constitution.

## COUNT II
## VOID FOR VAGUENESS

135. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

136. Governor Whitmer's Executive Order 2020-42 and accompanying FAQs are void for vagueness under the Fourteenth Amendment to the United States Constitution and Article 1, Section 17 of Michigan's 1963 Constitution.

29

137.   First, the Order itself expressly allows "outdoor physical activity" including (but not limited to) activities similar to canoeing and kayaking.  MUCC members and any person of ordinary intelligence would reasonably conclude that boating is a protected "outdoor physical activity" generally, and boating is certainly "similar" to canoeing and kayaking.   Yet, that reasonable conclusion would subject, and has already subjected, MUCC members to criminal prosecution.

138.   Second, the only mention of prohibited motorboat use is in the FAQs.  FAQs, however, are not law and no citizen of the State is required read, understand, or follow non-binding responses to FAQs.  Thus, the very existence of the FAQs does nothing to clarify that motorboat use is actually prohibited by the Order, instead of allowed by the Order (as it reads).

139.   Finally, even if FAQs were legally consequential, those at issue fail to define the term "motorboat" and "similar watercraft" with sufficient precision and particularity to give Plaintiff and its members, or any person of ordinary intelligence, fair notice of whether and to what extent Plaintiff and its members may exercise their fundamental right to navigate Michigan's waterways, and fish, hunt and engage in other activities protected by Michigan law.

140.   The Order and accompanying FAQs are also void for vagueness because they have resulted in arbitrary and discriminatory enforcement by Governor Whitmer and Director Eichinger against Plaintiff and its members.

141. Relying on the vagueness inherent in the Order and FAQs' restrictions, Governor Whitmer and Director Eichinger have fined, threatened to fine, and otherwise criminally prosecuted and penalized Plaintiff and its members for engaging in constitutionally-protected conduct based solely upon the arbitrary determination that MUCC members have navigated on, fished with, or otherwise operated motorized boats, while allowing others to engage in the same or similar activities using ostensibly non-motorized water craft.

142. Governor Whitmer and Director Eichinger's arbitrary and discriminatory enforcement of the unconstitutionally vague restrictions prevents Plaintiff and its members from knowing whether they or others will be arrested, fined, or otherwise penalized for violating those restrictions should they exercise their constitutionally protected rights, as discussed above.

143. As a direct and proximate result of Defendants' violation of the Fourteenth Amendment as set forth in this Complaint, Plaintiff and its members have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**COUNT III**
**EQUAL PROTECTION – FOURTEENTH AMENDMENT**

144. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

31

145. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Governor Whitmer and Director Eichinger have deprived Plaintiff and its members of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

146. As set forth in this Complaint, Executive Order 2020-42 and its accompanying FAQs deprive Plaintiff MUCC and its members of their fundamental rights and freedom, yet the restrictions provide exceptions for other activity and conduct that is similar in its impact and effects. The challenged measures lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the Order and accompanying FAQs, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause.

147. When the government treats an individual disparately as compared to similarly-situated persons and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis, such treatment violates the equal protection guarantee of the Fourteenth Amendment. As set forth in this Complaint, the challenged measures of Executive Order 2020-42 and its FAQs violate the equal protection guarantees of the Fourteenth Amendment.

148.   As a direct and proximate result of Defendants' violation of the equal protection guarantee of the Fourteenth Amendment as set forth in this Complaint, Plaintiff MUCC and its members have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## COUNT IV
## DUE PROCESS – FOURTEENTH AMENDMENT

149.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

150.   By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendant Whitmer and Director Eichinger have deprived Plaintiff MUCC and its members of their right to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

151.   The challenged measures of Executive Order 2020-42 and its accompanying FAQs, as set forth in this Complaint, lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the Order and its FAQs, and are a palpable invasion of rights secured by fundamental law in violation of the Due Process Clause of the Fourteenth Amendment.

152. Defendant Whitmer and Director Eichinger's actions, as set forth in this Complaint, deprived Plaintiff MUCC and its members of the use and enjoyment of their property without due process in violation of the Fourteenth Amendment.

153. The Due Process Clause of the Fourteenth Amendment protects the right to travel locally through public spaces and on navigable waterways.

154. The Due Process Clause of the Fourteenth Amendment also protects Plaintiff MUCC and its members' property interests in the use of their fishing licenses and State-registered motorized boats.

155. Plaintiff MUCC and its members also have protected liberty interests in their right to live without arbitrary governmental interference, and fundamental property rights to use and enjoy land and their riparian rights in which they hold a recognized interest.

156. Executive Order 2020-42 fails all levels of scrutiny because it broadly prohibits Plaintiff MUCC and its members from traveling through public spaces and navigable waterways, and yet the Order permits other travel with the same impact and effect of Plaintiff and its members' forbidden travel, in violation of the Fourteenth Amendment.

157. Executive Order 2020-42 is arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiff MUCC and its

members' liberty and property interests protected by the Due Process Clause of the Fourteenth Amendment.

158.   As a direct and proximate result of Defendant Whitmer's violation of the Fourteenth Amendment as set forth in this Complaint, Plaintiff MUCC and its members have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**COUNT V**
**DORMANT COMMERCE CLAUSE**
**(EXCESSIVE BURDEN ON INTERSTATE COMMERCE)**

159.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

160.   The Governor's Order and FAQs contradict and are inconsistent with other States' stay-at-home orders, with the adverse effect of eliminating navigation, fishing, and other activities conducted in connection with motorized boats between States and in relation to interstate commerce.

161.   The burdens Governor Whitmer's Order and FAQs place on interstate commerce, including but not limited to the complete ban of the use of motorized boats anywhere in the State of Michigan's interstate and inland waters, are clearly excessive in relation to the ostensible state interest in preventing the spread of COVID-19 through activities conducted on motorized boats.

162.   As a result, Governor Whitmer's Order and FAQs violate the Commerce Clause, art. I, § 8, cl. 3 of the United States Constitution.

163.   MUCC and its members will suffer irreparable harm if Defendants are permitted to continue to enforce the Order and FAQs and its attendant bans on interstate commerce.

164.   MUCC is therefore entitled to a declaratory judgment that the ban on navigation, fishing, and other activities in connection with motorized boating, created and enforced by the Governor's Order and FAQs, is unconstitutional under the Commerce Clause.

165.   MUCC is further entitled to an injunction prohibiting Defendants from enforcing the ban on motorized boating activities embodied in Governor Whitmer and Director Eichinger's directives.

## COUNT VI
## DORMANT COMMERCE CLAUSE
### (EXTRATERRITORIALITY)

166.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

167.   Because Governor Whitmer's Order and FAQs bans navigation, fishing, and other activities in connection with motorized watercraft anywhere in the interstate and inland waters of the State of Michigan, including the Great Lakes, the directives impermissibly regulate commerce occurring entirely outside

the borders of the State of Michigan by preventing and otherwise regulating navigation, travel, distribution, transportation, and other activities occurring outside of Michigan.

168.   Additionally, Governor Whitmer's overbroad directives force other states to comply with the ban on navigation, fishing, and other activities on motorized watercraft to be able to navigate on the interstate and inland waters of the State of Michigan.

169.   Governor Whitmer's directives thereby exceed the inherent limits of Michigan's authority in violation of the Commerce Clause of the United States Constitution, art. 1, § 8, cl. 3.

170.   MUCC and its members will suffer irreparable harm if Defendants are permitted to continue to enforce Governor Whitmer's Order and FAQs as described in this Complaint.

171.   Plaintiff is therefore entitled to a declaratory judgment that Governor Whitmer's Order and FAQs violate the Commerce Clause.

172.   Plaintiff is further entitled to an injunction prohibiting Defendants from enforcing the motor boating ban in Governor Whitmer and Director Eichinger's directives.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court, on an expedited basis, enter judgment in its favor and against Governor Gretchen Whitmer and Director Daniel Eichinger, as follows:

A.   Declaring Governor Whitmer's Executive Order 2020-42, as it purports to relate to motorized boating, void for vagueness in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 17 of Michigan's 1963 Constitution.

B.   Declaring that Governor Whitmer and Director Eichinger violated Plaintiff MUCC and its members' fundamental constitutional rights as set forth in this Complaint;

C.   Declaring that Governor Whitmer's Executive Order 2020-42 and FAQs, as they relate to motorized boating, violate the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3, and is therefore unconstitutional to the extent that it prohibits navigation and other related activities in connection with motorized boats;

D.   Temporarily, preliminarily, and permanently enjoining and restraining Governor Whitmer and Director Eichinger, and any other person acting under authority of the Governor and Director, from enforcing

the challenged measures of Executive Order 2020-42 and/or the FAQs as set forth in this Complaint, including but not limited to impeding use of otherwise lawful public access to Michigan waters;

E.      Awarding Plaintiff compensatory and punitive damages;

F.      Awarding Plaintiff its reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

G.      Awarding all other relief to which Plaintiff may be entitled.


VARNUM LLP
Attorneys for Plaintiffs


Date: April 19, 2020          By:    */s/ Aaron M. Phelps*
                                     Aaron M. Phelps (P64790)
                                     Herman D. Hofman (P81297)
                                     Seth B. Arthur (P82033)
                              Business Address & Telephone:
                                     Bridgewater Place, PO Box 352
                                     Grand Rapids, MI, 49501-0352
                                     Phone:  (616) 336-6000
                                     Fax:  (616) 336-7000
                                     amphelps@varnumlaw.com
                                     hdhofman@varnumlaw.com
                                     sbarthur@varnumlaw.com

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial on all counts contained in the Complaint.

VARNUM LLP
Attorneys for Plaintiffs


Date: April 19, 2020        By:    */s/ Aaron M. Phelps*
                                   Aaron M. Phelps (P64790)
                                   Herman D. Hofman (P81297)
                                   Seth B. Arthur (P82033)
                            Business Address & Telephone:
                                   Bridgewater Place, PO Box 352
                                   Grand Rapids, MI, 49501-0352
                                   Phone:  (616) 336-6000
                                   Fax:  (616) 336-7000
                                   amphelps@varnumlaw.com
                                   hdhofman@varnumlaw.com
                                   sbarthur@varnumlaw.com


16293033_1.DOC

40